REINO, RESPONDENT, v. MONTANA MINERAL LAND DEVELOPMENT CO., APPELLANT.

(No. 2,583.)

(Submitted December 23, 1908. Decided February 8, 1909.)

[99 Pac. 853.]

*Personal Injuries—Master and Servant—Mines—Negligence— Evidence—Insufficiency—Duty of Master—Erroneous Instruction.*

Personal Injuries—Negligence—Evidence.
   1.   Negligence must be shown; it will not be presumed.
Same—Master and Servant—Mines—Negligence—Evidence—Insufficiency.
   2.   Plaintiff, a miner, while working at the bottom of a mining shaft, was injured by a bucket, used for hoisting waste, falling upon him. The evidence merely showed that the bucket had been hanging over the shaft and that the boxing on one end of the drum around which the cable attached to the bucket ran, having become loose, the engineer removed it preparatory to remedying the defect, and that thereupon the brake holding the drum stationary released its hold and the bucket fell. The evidence failed to show that the engineer ought reasonably to have anticipated that the removal of the boxing from the drum would cause the brake to be released and the bucket to be

precipitated down the shaft.  *Held,* under the rule that negligence is the proximate cause of an accident only where it is such that a person of ordinary intelligence should have foreseen that injury was likely to be caused by his act or omission, that the evidence failed to establish negligence on the part of the engineer.

Same—*Res Ipsa Loquitur*—Inapplicability of Maxim.

3.  Under the circumstances recited in the foregoing paragraph, the maxim, "*Res ipsa loquitur,*" had no application.

Same—Duty of Master—Erroneous Instruction.

4.  An instruction that the servant has the right to presume, and to act upon such presumption, that defendant master would at all times use ordinary care to *protect* the plaintiff, etc., placed too great a burden upon the master, since the latter is only bound to use reasonable care to provide a reasonably safe place in which to work, reasonably safe appliances with which to perform his duties, and reasonably competent fellow-servants with whom to work.

*Appeal from District Court, Jefferson County; Lew L. Callaway, Judge.*

Action by Abraham Reino against the Montana Mineral Land Development Company.  From a judgment for plaintiff and an order denying it a new trial, defendant appeals.  Reversed and remanded for new trial.

*Messrs. Kremer, Sanders & Kremer,* and *Messrs. Walsh & Nolan,* for Appellant.

*Messrs. Walsh & Newman,* and *Mr. C. R. Stranahan,* for Respondent.

Appellant's contention that there is no issue of fact in the record on the question of negligence of appellant is without merit. In a case of this character, it is sufficient if, upon all the evidence, it appears that, while the plaintiff was below in a place of danger, the defendant or its engineer changed the ordinary or usual conditions of things whereby the danger was increased or rendered extraordinary.  This the engineer did in undertaking to take apart the machinery sustaining the bucket in position, and that without warning to the plaintiff and without removing the bucket or putting a support under it.  (See *Christianson* v. *Chicago etc. Ry. Co.,* 67 Minn. 94, 69 N. W. 640; *Jensen* v. *Commodore Min. Co.,* 94 Minn. 53, 101 N. W. 944;

*Morey* v. *Lake Superior T. & T. Ry. Co.,* 125 Wis. 148, 103 N. W. 271.)

The servant assumes the natural and ordinary risks incident to his employment, but the negligence of the master, or those acting in his place, is not among the risks so assumed. Whenever the master's negligence or the negligence of the person acting in his place is the proximate cause of the injury to the servant, the master is liable. (*City of Emporia* v. *Kowalski,* 66 Kan. 64, 71 Pac. 232; *Hone* v. *Mammoth Min. Co.,* 27 Utah, 168, 75 Pac. 381; *Pittsburgh Ry. Co.* v. *Lightheiser,* 168 Ind. 438, 78 N. E. 1033; *Chicago & E. R. Co.* v. *Lawrence,* 169 Ind. 319, 79 N. E. 363, 82 N. E. 768; *Miller* v. *Union Mill Co.,* 45 Wash. 199, 88 Pac. 130; *Schillinger* v. *Smith,* 225 Ill. 74, 80 N. E. 65; *Dunne* v. *Jersey City,* 73 N. J. L. 586, 64 Atl. 1076; *McCabe Co.* v. *Wilson,* 17 Okl. 355, 87 Pac. 320; *Choctaw etc. Ry. Co.* v. *Jones,* 77 Ark. 367, 92 S. W. 244; *Denver & Rio Grande Co.* v. *Warring,* 37 Colo. 122, 86 Pac. 305; *Galveston etc. Co.* v. *Udalle* (Tex. Civ.), 91 S. W. 330; *Rector* v. *Bryant etc. Mill Co.,* 41 Wash. 556, 84 Pac. 7; *Erickson* v. *McNeeley Co.,* 41 Wash. 509, 84 Pac. 3; *Union Pac. Ry. Co.* v. *O'Brien,* 161 U. S. 451, 16 Sup. Ct. 618, 40 L. Ed. 766; *Hammond Co.* v. *Mason,* 12 Ind. -App. 469, 40 N. E. 642; *Davis* v. *New York Ry. Co.,* 159 Mass. 532, 34 N. E. 1070.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This is an action for damages for personal injuries. The plaintiff recovered judgment and the defendant appeals from the judgment and from an order denying it a new trial. At the close of plaintiff's case the defendant moved for a nonsuit, which was denied, and this ruling is specified as error.

1. The plaintiff testified that he was working for the defendant as a miner in a double-compartment inclined shaft, eighty-five feet deep; that a bucket was used to hoist waste, the bucket being raised and lowered by a stationary engine near the mouth of the shaft. It appears that a cable was attached to the bucket,

then run over a pulley in the gallows frame, and down to and around a drum, the drum being operated by the engine; that the movements of the drum could be controlled by a friction clutch, gear, or brake, so that, when the bucket was at the surface, it could be held in that position by means of this brake operating on the drum. The plaintiff further testified that on the occasion of his injury the bucket had been raised to the surface; that he was at the bottom of the shaft at work, when, without warning to him and without any opportunity to escape, the bucket fell upon him, crushing one of his legs to such an extent that amputation of the foot was necessary. He testified that a Mr. Ward was the engineer who at the time was in charge of and operating the hoisting engine. He also testified concerning his age, earning capacity before his injury, and his condition after his injury. Dr. Ward also told of the plaintiff's injury and of his having amputated the plaintiff's foot. A witness Peterson, who was also an engineer and who was to take Ward's place on the succeeding shift, testified that he was at the engine at the time of the accident, which occurred some time before he was to go on shift. These questions were then propounded to him, which he answered: "Q. Go on and tell us how the engine was operated and the raising and lowering of the bucket, particularly describe the drum; what it was that held the bucket up; and what loosened it to let the bucket go down. A. There was a platform there, and the engineer pulled on the rope that throwed the platform back, and there was a chain on the bucket and washer, and a slot that the chain dropped in; we pulled that over, and that lowered the bucket a little. It would tip it right over and into the car, and we would raise the bucket back up again and that pulled the trapdoor back and the bucket was already over the shaft to be lowered. Q. How did you lower the bucket? A. We loosened the friction. Q. You loosened the friction and it goes down that way? A. Yes, sir. Q. What was it that held the bucket that night as it hung over the shaft? A. The brake. Q. Go on and tell us what Mr. Ward was doing, tell us all about it, and tell what occurred. A. Mr. Ward took

the box off from one end of the drum, and was going to shim it up, put some shims in. The boxing was loose, and he was going to shim it up, and the drum raised up and come out of gear so that the brake would not hold it, and the bucket went down, and that is when Reino was hurt. Q. Could the bucket as it hung there have been pulled over or swung over on the ground by the side of the shaft while doing that work? A. Yes, sir; it could have been.'' This is the substance of all of plaintiff's testimony. Does it show or tend to show negligence on the part of Ward, the engineer? It is a general rule that negligence must be shown. It will not be presumed. In *Rysdorp* v. *George Pankratz Lumber Co.*, 95 Wis. 622, 70 N. W. 677, it is said: ''Negligence is the cause of the accident, in a legal sense, only when it is of such a character as that men of ordinary prudence, judgment, and experience ought reasonably in the light of the attending circumstances to have foreseen that it was likely to produce such an accident.''

In 1 Thompson's Commentaries on the Law of Negligence, it is said: ''As will more fully appear in the next title the law does not impute negligence to an injury that could not have been foreseen or reasonably anticipated, as the probable result of a given act or omission. * * * '' (Section 28.) ''It follows that the negligence of a person cannot be the proximate cause of a harm to another following it, unless, under all the attending circumstances, ordinary prudence would have admonished the person sought to be charged with the negligence that his act or omission would probably result in injury to some one. The general test as to whether negligence is the proximate cause of an accident is therefore said to be whether it is such that a person of ordinary intelligence should have foreseen that an accident was liable to be produced thereby.'' (Section 50.)

The general rule of law applicable in a case of this character is very fully stated in *Morey* v. *Lake Superior T. & T. Co.*, 125 Wis. 148, 103 N. W. 271, 12 L. R. A., n. s., 221, as follows: ''It is not required that the 'specific' injury or 'such' an injury as is complained of was or ought to have been specifically antici-

pated as the natural and probable consequence of the wrongful act. It is sufficient if the facts and circumstances are such that the consequences attributable to the wrongful conduct charged are within the field of reasonable anticipation; that such consequences might be the natural and probable results thereof, though they may not have been specifically contemplated or anticipated by the person so causing them.'' (See, also, 1 Thompson's Commentaries on the Law of Negligence, sec. 59.)

But the difficulty presented here is that the evidence is barren of any facts showing or tending to show that Ward, the engineer, ought reasonably to have anticipated that the removal of the boxing from the drum would cause the brake to be released and the bucket to be precipitated down the shaft. If the plaintiff had shown the relation of the several pieces of machinery, one to the other; that the relation of the brake to the drum was such that, if the drum was moved, the brake would cease to perform its functions; that the relation of the boxing to the drum was such that, if the boxing was removed, the weight of the bucket on the cable would move the drum from its position and release the brake; that the relation of the bucket to the drum was such that, if the drum was not held stationary by the brake, the weight of the bucket would cause the drum to revolve, and the bucket to be let down with force sufficient to cause injury, it would have been for the jury to say whether in removing the boxing Ward, as a reasonable man, ought to have anticipated that the bucket might be precipitated with force down the shaft, or, in other words, whether he ought to have anticipated that the falling of the bucket would be the natural, though not the necessary or inevitable, result of the removal of the boxing. (1 Thompson's Commentaries on the Law of Negligence, sec. 59.)

The maxim, ''*Res ipsa loquitur*'' does not have any application to facts such as are shown here. The only fair inference deducible from plaintiff's evidence is that the bucket fell because the drum was permitted to be moved from the brake, so that the brake would no longer hold it, and the drum was caused to be moved by reason of the removal of the boxing. Under these circumstances, the falling of the bucket does not necessarily speak

negligence on the part of Ward in removing the boxing.   It may or may not have been negligence on his part, depending upon the circumstances to which we have adverted above.

2. Objection is made to instruction No. 6, given to the jury as follows: "No. 6. The court instructs you that the plaintiff has the right to presume, and to act upon such presumption, that the defendant would at all times use ordinary care to *protect* the plaintiff and other employees, and that the plaintiff had the right to presume, and to act upon the presumption, that at all times the hoisting engineer would exercise ordinary or reasonable care in the handling of his engine and said bucket." Exception is taken to the use of the word "protect." The word is defined as follows: "To guard, shield, preserve." (Webster's International Dictionary.) "To cover or shield from danger, harm, damage, trespass, exposure, insult, temptation or the like; defend; guard; preserve in safety; synonyms: defend; shield; screen; secure." (Century Dictionary.) "To cover, shield or defend from injury, harm or danger of any kind." (Encyclopedic Dictionary.) We must assume that the jury understood this word according to its commonly accepted meaning; and, if they did so understand it and construed the instruction accordingly, it is manifest that a greater burden was cast upon the defendant company than is authorized by law. The rule of the master's liability, and, in fact, the limit of such liability, is to use reasonable care to provide his servant with a reasonably safe place in which to work, reasonably competent fellow-servants with whom to work, and reasonably safe appliances with which to work. (*Anderson* v. *Northern Pacific Ry. Co.*, 34 Mont. 181, 85 Pac. 884; *Fearon* v. *Mullins*, 35 Mont. 232, 88 Pac. 794; *Longpre* v. *Big Blackfoot Milling Co.*, ante, p. 99, 99 Pac. 130, just decided.)

For the reasons stated, the judgment and order are reversed, and the cause is remanded for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.

Rehearing denied March 10, 1909.